UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CR-60155-LEIBOWITZ
CASE NO. 25-CR-60015-LEIBOWITZ

UNITED STATES OF AMERICA

v.

CARLOS ABREU,

    Defendant.
_____/

## UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR UPWARD VARIANCE

This is not a typical false documents case. Nor is this a typical aggravated identity theft case. This Defendant, Carlos Abreu, used a stolen identity for almost two decades to live without detection, get married, vote, take out loans, and get arrested. The Defendant's victim faces a years-long project to convince nearly every institution in modern society—the federal government, federal and state law enforcement, the credit bureaus, banks, etc—that the Defendant's misdeeds are not *his* misdeeds. This Defendant's crimes—in scope, severity, and length—are far greater than a normal case and demand a far longer than normal sentence based on the Section 3553(a) factors.

This Court should vary upwards to sentence this Defendant to a total of 120 months of incarceration, structured as 96 months, followed by the mandatory 24-months term based on count 4 in case number 24-CR-60155. The guidelines severely understate the scope, length and impact of the Defendant's criminal conduct and his criminal history category understates his persistent disregard for the law.

## I.      FACTUAL AND PROCEDURAL HISTORY

For almost two decades, the Defendant, Carlos Abreu, illegally used his victim's name, date of birth, place of birth, and Social Security Number to conceal his (the Defendant's) presence in the United States. The Defendant impersonated the victim in every aspect of modern life. The Defendant: obtained government documents, filed taxes, entered a marriage, obtained citizenship for his spouse, purchased firearms, received stimulus checks, obtained licenses, got arrested, opened credit cards and other lines of credit, purchased firearms, rented property, voted in federal elections and even used the stolen identity on his minor children's birth certificates. The victim, who has spent his entire life in Puerto Rico, now faces an unfathomable, years-long odyssey to untangle the Defendant's criminal misdeeds from his financial, governmental, and social history.

The Defendant, a citizen of the Dominican Republic, entered the United States without inspection. In 2001, the Defendant married a United States citizen in New Jersey. They had a child in common and began the process of obtaining legal status in the United States for the Defendant. In other words, the Defendant was on the route to a happy, prosperous life in the United States, with the potential for United States citizenship.

The Defendant ruined his chances at that happy outcome when, in August 2007, his neighbor's child accused the Defendant of molestation.[1] The Defendant's wife called the Defendant and informed him of the accusation. The Defendant said words along the lines of "Ok, I'll deal with this when I come home.[2]" But the Defendant never came home—instead he left his

---

[1] In a 2013 passport application for their minor child in common, the Defendant's wife provided a written statement of special circumstances to explain why she was unable to obtain the signature of the Defendant on their minor child's passport application. She wrote that she did not know the whereabouts of the Defendant because "on August 2, 2007 he fled our home after being accused of assaulting a child."

[2] New Jersey subsequently issued an arrest warrant, which remains active and extraditable for kidnapping, sexual assault, endangering the welfare of a child and criminal restraint.

2

family, assumed the identity of a United States citizen and began what became a decades-long, continuous, criminal identity fraud scheme.

That same month, in August 2007, the Defendant obtained a Florida identification card in the name of his United States citizen victim "C.R.V." Thereafter, the Defendant fully assumed C.R.V.'s identity, including exercising the rights and privileges afforded to United States Citizens. In the process he obtained and used authentic identity documents in C.R.V.'s name from multiple state and federal agencies, including an authentic birth certificate from Puerto Rico, an authentic social security from the Social Security Administration, a Florida Voter Registration Card from the Broward Supervisor of Elections and a Florida Concealed Weapons Permit from the Florida Department of Agriculture. In 2020, the Defendant registered to vote in Broward County, Florida. In 2022, the Defendant voted in a federal election and purchased firearms.

Not content to damage only C.R.V.'s life, the Defendant got married using C.R.V.'s name, he also obtained citizenship for his new wife. And, without ever disclosing that he was not C.R.V., adopted his new wife's daughter and fathered one child with her and ensured that those innocent children's birth certificates also bore a false name. In October 2021, the Defendant executed three separate passport applications, for himself and two minor daughters, using C.R.V.'s identity.

The Defendant was arrested on August 21, 2024.

## II.   CALCULATIONS

According to the revised PSR the Defendant has a total offense level of 20, a criminal history category I and a corresponding guideline rang of 33 to 41 months. (PSR ¶ 108). There is a 24-month mandatory sentence for Count 4, in case number 24-CR-60155, that must be consecutive to any other sentence imposed. (PSR ¶ 108).

The United States does not object to the PSR.

### III. <u>ARGUMENT</u>

After considering the Section 3553(a) factors, this Court should vary upwards because: (1) the Guidelines do not fully account for the scope and length of the conduct; (2) the Guidelines do not take into consideration the grievous harm the Defendant inflicted on C.R.V., and (3) a Guidelines sentence would not adequately specifically and generally deter further misconduct.

**A. An Upward Variance is Appropriate Here Based on the Seriousness, Nature and Circumstances of the Offense**

**i. The Guideline Calculations Do Not Capture the Scope and Length of the Conduct**

*First*, the Guidelines do not adequately encapsulate the severity or the scope of the Defendant's almost *twenty years* of criminal conduct. In other words, had the Defendant been caught immediately, or after one year, or two years, he would face the same Guidelines. But he is not similarly situated to someone who was caught immediately. He has been impersonating his victim since the Bush administration.

*Second,* as to the severity, this Defendant fully emmeshed himself in his victim's life. Over the course of nearly two decades, he amassed almost every legal document a person needs to prove their identity—drivers licenses, a social security card, concealed weapons permit, a birth certificate, marriage certificate, a voter registration card. He established a financial history and a social history, all of which perpetuated and reinforced that he was C.R.V., a United States Citizen.

*Third*, the Defendant's motive was far worse than pure greed or mere desperation. In 2007, the Defendant was married and on the route to legal status. But he adopted a new identity to avoid a molestation charge. While this Court sentences many people who come to the United

States as immigrants, seeking a better life, this Defendant is not similarly situated to those defendants. This Defendant was fleeing criminal charges for sex crimes.

The Defendant baldly decries that the allegations against him are baseless. (DE 59 at 6). But he ignores the close temporality between: (1) his learning of the allegations in August 2007; (2) his flight that same month; and (3) his procurement of a Florida state identification card that same month. The Defendant adopted a new identity and embarked on a seventeen-year fraud after being accused of sexually abusing a neighbor's child. A crime that he is stilled wanted for today.

*Fourth*, the Defendant was so successful in evading prosecution and starting a new life because of the thoroughness with which he committed his crimes. These crimes do not represent a mistake or have a solitary lapse in judgment. To the contrary, the Defendant has consistently engaged in a plethora of fraudulent conduct indicating an inability to obey the law. In other words, this Defendant—wanted for child molestation and with an aggravated battery charge on his record—was not a model citizen who happened to be born in the wrong country. He will take advantage of, and lie to, anyone to avoid consequences. In short, the Guidelines do not account for the fact that the Defendant's conduct allowed him to evade apprehension and criminal prosecution for a sex offense against a child. The Guidelines do not account for the length and scope of the Defendant's conduct. The Guidelines do not account for the myriad ways the Defendant perpetrated and perpetuated the offense. All point to a need for significant sentence, as the Guidelines simply do not account for the outrageousness of the Defendant's conduct.

### ii. The Guideline Calculations Do Not Appropriately Account for the Defendant's Harm Inflicted on the Victim

The Defendant has caused long-lasting, potentially life-long implications for C.R.V.

*First*, the Defendant was *arrested* for aggravated battery with a deadly weapon while impersonating C.R.V. In the future, any employer, landlord, financial institution, or law

5

enforcement agency will see that arrest of C.R.V. The Defendant, in other words, gave an innocent person a criminal history.

*Second*, the Defendant has created significant financial difficulties for the victim. The Defendant obtained loans, incurred debt, opened bank accounts and filed taxes. The Defendant created a significant and false credit history for the victim.

Further, the Defendant *stole* money intended for the victim. C.R.V. did not receive any of the COVID 19 stimulus checks he was entitled to. The Defendant did. His ability to obtain necessary loans and other financial assistance after the Hurricane Maria devastated Puerto Rico was impacted by the havoc the Defendant has caused on his financial history. The guidelines here, unlike in cases involving financial crimes, fail to account for the significant financial and social impact the Defendant's actions have caused and will continue to have on C.R.V. financially and socially. The Defendant ruined C.R.V.'s credit, stole his stimulus check, caused him to lose his car, gave him a criminal history, and, in summary, will cause an innocent man to spend hours on the phone to disentangle C.R.V.'s life from the Defendant's misdeeds.

Also, it is worth touching on the fact that the Defendant caused an innocent woman to get married to him and induced her to financially rely on him—all while lying to her about crucial aspects of his life and background. He obtained derivative citizenship for her, and gave his (fake) name to her two children. While she is not the Defendant's "victim," he upended her life through his crimes and inability to abide by the law just the same.

### iii. Deterrence is Necessary

Another significant 3553(a) factor this Court must consider is "the need for the sentence imposed "to afford adequate deterrence to criminal conduct." 18 U.S.C. §3553(a)(2)(B). To abate similar conduct in the future, this Court should impose a severe sentence that will serve as a

warning to individuals considering similar conduct. The Defendant's false claims of United States citizenship to register to vote, vote and attempt to obtain a United States passport are offenses undermine the credibility of the very foundations of our democracy.

### B. The Court Should Deny the Defendant's Motion for a *Booker* Variance

#### i. The Defendant's conduct is egregious and not similarly situated to other offenders in the same guideline range

The Defendant points to the sentences of other offenders with the same guideline range as a basis for a downward variance. But such a comparison ignores the specific offense characteristics here. Most importantly, that the Defendant's criminal history category I, does not account for the 17 years of continuous criminal conduct he was committing in furtherance of these offenses.

Nor does it account for the fact that the Defendant's criminal conduct facilitated the Defendant avoiding criminal prosecution in New Jersey. The Defendant claims, without support, that there is no evidence that the criminal conduct here is related to learning that he was being accused of sexually assaulted a neighbor's child. Despite the certified documents, disclosed in discovery, which show the Defendant obtained a Florida identification card with C.R.V.'s biographical information and the Defendant's likeness for the first time, in August 2007, the same month he learned of the accusation. It also ignores his first wife's sworn statement made in an application for a United States Passport for their son, also disclosed in discovery, where she describes the Defendant learning of the accusation and then absconding, abandoning their family. The Defendant was also using the alias C.R.V. three years later—not seven like the Defendant claims— when he was arrested in Broward County, Florida, in 2010 for aggravated battery with a deadly weapon. There is a plethora of evidence that shows the Defendant used C.R.V.'s identity persistently for almost seventeen years. Starting the month he was accused of sexual abuse of a

7

child. Not only has he victimized C.R.V., but through this conduct, he has thwarted justice for the victim of the 2007 crime.

The Defendant's self-characterization as hapless young man is a misdirection. (DE 59 at 5). When the Defendant first began committing these crimes, it was 2007. He had been in the United States for six years, gotten married, and begun legal process to get status in the United States. He was not "hapless" or "young." He had been in the United States for over half a decade and availed himself of multiple legal proceedings. He knew it was wrong to steal someone's identity to avoid molestation charges, flee to another state and live as that person, father children under an assumed name, get arrested in someone else's name, take out loans in someone else's name, vote in someone else's name, and ruin someone else's life. The Defendant's actions were not out of naivety. They were out of necessity to avoid criminal prosecution.

The specific characteristics of the offense and the Defendant are aggravators that take the Defendant and the offense conduct far outside the heartland of these offenses and this guideline range.

[Intentionally Left Blank]

## IV.   CONCLUSION

The Court should grant the United States motion for an upward variance, deny the Defendant's motion for a downward variance and sentence the Defendant to a total of 120 months.

Respectfully submitted,

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

By:   *s/Brianna Coakley*
Brianna Coakley
Assistant United States Attorney
Court ID No. A5503184
United States Attorney's Office
99 NE 4th Street, 6th Floor
Miami, Florida 33132
(305) 961-9127
Brianna.Coakley@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 4, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which provides electronic notice of the filing.

*s/Brianna Coakley*
Brianna Coakley